UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAG IAS HOLDINGS, INC., and
MAG U.S. HOLDINGS, LLC,

    Plaintiffs,

                                                  Case No. 15-14010

v.

                                                  Hon. John Corbett O'Meara

RAINER SCHMÜCKLE,

    Defendant.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION TO DISMISS

      Before the court are Defendant's motions to dismiss for lack of personal jurisdiction and for failure to state a claim. The court heard oral argument on March 31, 2016, and took the matter under advisement. For the reasons explained below, Defendant's motion to dismiss for lack of personal jurisdiction is granted.

## BACKGROUND FACTS

      This dispute arises out of Defendant Rainer Schmückle's tenure as CEO of the MAG Group, a multinational manufacturing company. Plaintiffs are MAG IAS Holdings, Inc., a Delaware corporation, and MAG U.S. Holdings, LLC, a Delaware limited liability company. MAG U.S. Holdings, LLC, owned 100% of MAG

Automotive LLC, a Delaware limited liability company with a principal place of business in Sterling Heights, Michigan. Moshe Meidar controls both Plaintiffs, as president of MAG IAS Holdings and chairman of MAG U.S.

On November 17, 2014, Schmückle was appointed CEO of the worldwide MAG Group and Managing Director of MAG IAS GmbH ("MAG Germany"), a German limited liability company. Schmückle is a German citizen who resides in Stuttgart, Germany. Schmückle's employment at MAG Germany was governed by contract, which provided that his "habitual place of work" would be in Germany, that German law governs any disputes, and that any disputes would be resolved in Germany. Schmückle had management and operational authority over the MAG Group, including its Michigan operations.

Because of the company's financial situation, Schmückle was given the responsibility of either selling MAG assets or refinancing. Plaintiffs contend that Schmückle sought to sell assets – which would trigger an equity bonus for Schmückle – rather than seek other investment and financing opportunities. Plaintiffs claim that Schmückle acted in his own interest rather than in the interest of the MAG Group by thwarting or ignoring potential financing partners or bidders.

Schmückle was terminated as CEO of the MAG Group on June 4, 2015.

Plaintiffs contend that the majority of potential investors or buyers dropped out of the bidding process as a result of Schmückle's actions. On June 12, 2015, MAG Holdings and Meidar entered into a memorandum of understanding to sell MAG's business, including MAG Germany, to a Taiwanese company, the Fair Friend Group. Plaintiffs contend that the Fair Friend Group's offer was materially less than bids submitted by previously interested firms. The sale closed in November 2015.

On September 1, 2015, Schmückle filed suit against MAG Germany in district court in Ulm, Germany, for wrongful termination. MAG Germany filed a statement of reply in the German litigation on October 26, 2015. According to Schmückle, the German Reply contains many of the same assertions that Plaintiffs make here, including that Schmückle attempted to steer MAG toward a sale rather than considering other financing alternatives. The German litigation remains pending.

Plaintiffs (not MAG Germany) filed this litigation in state court on August 19, 2015; Defendant removed it to this court on November 16, 2015. Plaintiffs' complaint alleges the following claims: Count I, breach of fiduciary duties; Count II, professional negligence and mismanagement; Count III, waste of corporate assets; Count IV, unjust enrichment; and Count V, tortious interference. Defendant

seeks dismissal for lack of personal jurisdiction, forum non conveniens, or for failure to state a claim.

## LAW AND ANALYSIS

### I. Standard of Review

Schmückle seeks dismissal of this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of demonstrating that jurisdiction exists and, in the face of a properly supported motion for dismissal, must "set forth specific facts showing that the court has jurisdiction." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). The court has three alternatives for dealing with a Rule 12(b)(2) motion: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve apparent factual questions." Id. The court has discretion to select which method it will follow; however, the method selected affects the burden of proof the plaintiff must bear to avoid dismissal. Id. "Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." Id. When relying solely on the papers, the court must view the evidence in the light most favorable to the plaintiff and "does not weigh the controverting assertions of the parting seeking dismissal."

Id. at 1459.  "We adopted this rule . . . in order to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts. . . ." Id.

## II.     Personal Jurisdiction

Plaintiffs claim that this court has specific or limited, rather than general, jurisdiction over Schmückle.  In analyzing specific jurisdiction, the court must engage in a two-step process: "(1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process." Air Products and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007).  See also Green v. Wilson, 455 Mich. 342, 350-52 (1997).

Plaintiff argues that the applicable long-arm statute is satisfied because Schmückle has conducted "[t]he transaction of any business within the state." M.C.L. § 600.705(1).  Assuming this provision is satisfied, an exercise of personal jurisdiction over Schmückle also must comport with due process.

Three criteria must be met to satisfy due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.

> Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1299 (6th Cir. 1989) (quoting Southern Machine Co. v. Mohasco Indus. Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

The first criterion – a showing that the defendant has "purposefully availed itself of the privilege of transacting business" in the forum state, thus invoking the benefits and protections of its laws – is "the *sine qua non* for *in personam* jurisdiction." Id. (quoting Mohasco, 401 F.2d at 381-82). The "purposeful availment" prong is satisfied by the "kind of substantial relationship with the forum state that invokes, by design, 'the benefits and protections of its laws' as opposed to a mere 'collateral relation to the forum state.'" Id. (citations omitted).

> This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations omitted).

With respect to the purposeful availment prong, Plaintiffs contend that

-6-

Schmückle made two visits to Michigan, meeting with management and clients. Compl. at ¶ 19-20. Plaintiffs also assert that Schmückle exercised control over MAG's Michigan operations and that Michigan-based officers reported directly to him. See Prina Aff. at ¶ 5-6, 10; Compl. at ¶ 19-23. For example, Schmückle directed that some purchase orders be transferred from Michigan to Germany to "level the workload." Prina Aff. at ¶ 11.

Schmückle's alleged control over MAG's Michigan operations is not sufficient to demonstrate purposeful availment. "[T]he fact that an agent of a company has an ownership interest or otherwise exercises control over the company is not a sufficient basis on which to assert limited personal jurisdiction over that individual in another state in which the company does business." SFS Check, LLC v. First Bank of Delaware, 990 F. Supp. 2d 762, 771 (E.D. Mich. 2013), aff'd, 774 F.3d 351 (6th Cir. 2014). Also weighing against purposeful availment is the choice-of-law provision in Schmückle's employment contract with MAG Germany and MAG Holdings, which states that it is governed by German law.[1] See Burger King, 471 U.S. at 481-82 (choice-of-law provision a factor in

---

[1] Plaintiffs argue that the forum selection/choice-of-law provision in Schmückle's employment contract does not apply to them, because only MAG Germany is a signatory. However, the agreement evidences *Schmückle's* intent to avail himself of the benefit and protection of German law with respect to his employment relationship and duties, not Michigan law. Further, the non-signatory Plaintiffs are sufficiently "closely related" to the signatories (MAG Germany and Moshe Meidar on behalf of MAG Holdings) to be

determining whether defendant purposefully availed himself of the benefits and protections of the forum law).

Further, although Schmückle had some contacts with Michigan, it does not appear that this controversy arises out of those contacts. A "substantial connection" must exist between the cause of action and the defendant's in-state activities. Bird v. Parsons, 289 F.3d 865, 875 (6th Cir. 2002); Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1091 (6th Cir. 1989). "Although this does not require that the cause of action arise formally and directly from defendant's contacts with the forum, the cause of action must still 'have a substantial connection with the defendant's in-state activities.'" Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1275 (6th Cir. 1998) (citation omitted). "Only

---

bound by the forum selection/choice of law clause. See Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC, 2011 WL 711568, at *8 (N.D. Ohio Feb. 22, 2011) (citing Baker v. LeBoeuf, Lamb, Leiby & Macrae, 105 F.3d 1102, 1105–06 (6th Cir. 1997)) ("A non-signatory to a contract, however, may be bound by a forum selection clause in that contract if the non-signatory is sufficiently "closely related" to the dispute that it is foreseeable that the party will be bound."). "[W]hen a control person agrees to a forum, it is foreseeable that the entities controlled by that person which are involved in the deal will also be bound to that forum." All Energy Corp. v. Energetix, LLC, 985 F. Supp. 2d 974, 990 (S.D. Iowa 2012). See also Hugel v. Corp. of Lloyd's, 999 F.2d 206, 210 (7th Cir. 1993).

when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." Third Nat'l Bank, 882 F.2d at 1091 (quoting Southern Machine, 401 F.2d at 384 n.29).

Plaintiffs' claims are not related to Schmückle's alleged visits to Michigan, communications directed to Michigan, or his alleged control over the company's Michigan operations. Rather, Plaintiffs allege that Schmückle orchestrated a sale of certain MAG Group assets:

> Among other things, Defendant thwarted bona fide investment and financing opportunities including overtures from one of Wall Street's most prominent and highly regarded investment banking firms; ignored potential financing partners or bidders with proposals or indications of interest that would not trigger his equity bonus; made unfounded and coercive threats of pushing MAG Group into insolvency despite legal counsel to the contrary; ignored directives from the MAG Board, which led to the realization that Defendant was a danger to the entire MAG Group; and intentionally created extensive delays in the financing process, needlessly increasing expenses, wasting corporate assets, and eroding the value of the MAG Group. . . . He also summarily rejected plans to refinance the MAG Group's publicly traded bonds [and instead] purchased the bonds for his own account at deeply depressed prices.

Pls.' Resp. at 8-9. See also Compl. at ¶ 32-59. Plaintiffs have not shown that these alleged actions, which form the basis of their claims, occurred in Michigan or were

related to Schmückle's Michigan contacts. According to Schmückle, "virtually all substantive communications relating to the strategic issues facing MAG, including discussions relating to the sale/refinancing/investor process, took place in Germany. MAG US's Michigan-based personnel did not play a significant role in these communications." Schmückle Decl. at ¶ 31. Plaintiffs do not dispute this characterization. See Dudek Affidavit; Prina Affidavit.

Further, the exercise of personal jurisdiction over Schmückle would not be reasonable. In applying the "reasonableness" requirement, the court considers "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interests of other states in securing the most efficient resolutions of controversies." American Greetings Corp. v. Cohn, 839 F.2d 1164, 1169-70 (6th Cir. 1988). Defending this litigation in Michigan would pose a burden for Schmückle, a German resident. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty., 480 U.S. 102, 114 (1987).

Neither Plaintiff is a Michigan resident, and the conduct of which Plaintiff complains did not take place in Michigan, leaving the state with little interest in

providing the forum for this controversy. Further, Schmückle's employment contract with MAG Germany/MAG Holdings states that his "habitual place of work" is in Germany and that Germany shall provide the law and forum to resolve disputes between the parties. Germany has a greater interest than Michigan in providing a forum for this dispute.

For all of these reasons, the court finds that the exercise of personal jurisdiction over Schmückle would not comport with due process. The court will grant Defendant's motion to dismiss for lack of personal jurisdiction.

## **ORDER**

IT IS HEREBY ORDERED that Defendant's motion to dismiss (Docket No. 7) is GRANTED.

                                             s/John Corbett O'Meara
                                             United States District Judge

Date: April 20, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, April 20, 2016, using the ECF system.

                                             s/William Barkholz
                                             Case Manager